**Brian KEENAN, an individual resident of the State of Minnesota, Appellee,**

v.

**COMPUTER ASSOCIATES INTERNATIONAL, INC., a foreign corporation, Appellant.**

No. 92–3261.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1993.

Decided Jan. 21, 1994.

Thomas P. Kane, St. Paul, MN, argued (Paul W. Iversen, on the brief), for appellant.

Kyle E. Hart, St. Paul, MN, argued, for appellee.

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Computer Associates International (CAI) appeals the district court's[1] denial of CAI's motion for judgment as matter of law or for a new trial, filed after a jury found for Keenan on his defamation and fraudulent misrepresentation claims in this diversity case. CAI

1. The Honorable J. Earl Cudd, United States Magistrate Judge for the District of Minnesota, presiding by the consent of the parties.

asserts that the district court erred in not finding, as a matter of law, that CAI had established a qualified privilege against liability for defamation under Minnesota law. CAI also asserts that the defamation damage award is excessive and that Keenan failed, as a matter of law, to establish his fraudulent misrepresentation claim. We affirm.

## I.

In the summer of 1989, Keenan became interested in working as a salesperson for CAI. He filled out an application and met with CAI a number of times during 1989. CAI informed him that there were no jobs available due to a hiring freeze. In the spring of 1990, Derf Manthe, CAI's District Manager, contacted Keenan about a sales position that was opening up on April 1, 1990. Keenan and Manthe met and discussed the prospective position a number of times during March and April of 1990. CAI eventually offered Keenan the job, and Keenan accepted. Keenan quit his job at Heublin Fine Wine Group, a wholly owned subsidiary of Grand Metropolitan, where he made between $40,000 and $50,000 per year. Keenan had been working for Grand Metropolitan or one of its subsidiaries for approximately four years.

On April 26, 1990, Keenan signed an Employment and Confidentiality Agreement with CAI that expressly stated Keenan could be fired by CAI at any time for any reason. Keenan began working for CAI on April 28, 1990. Approximately five weeks later, on June 4, 1990, Keenan was fired by Mary Lynn Yakel on her first day as CAI's new District Manager. Keenan left CAI after signing exit interview papers that stated CAI fired him for "poor performance."

Keenan interviewed for other jobs. He had to disclose at least five times to prospective employers that he was fired at CAI for poor performance. Keenan was unemployed for five months and eventually took a job selling Yellow Pages advertising. He later moved on to a sales job with a frozen yogurt company but was making less at the time of trial than he did when he left his liquor sales job to join CAI.

Keenan filed an eight-count complaint against CAI in July of 1990. The case went to trial on three counts: wrongful termination, defamation, and fraudulent misrepresentation. CAI moved for judgment as a matter of law at the close of Keenan's case and again at the close of all of the evidence. The district court denied both of CAI's motions. The jury found for CAI on the wrongful termination claim and found for Keenan on the defamation and fraudulent misrepresentation claims. The jury awarded Keenan $100,000 on the defamation claim and $57,000 on the fraudulent misrepresentation claim.

CAI filed a post-trial motion for judgment as a matter of law or, alternatively, for a new trial on the defamation and fraudulent misrepresentation claims. Keenan also moved for a new trial on the wrongful termination claim and on the damage award for fraudulent misrepresentation. The court denied the motions and allowed the jury verdict to stand on all counts. CAI appealed. Keenan filed a cross-appeal which was later dismissed.

## II.

CAI argues that the district court erred when it denied CAI's motion for judgment as a matter of law or, in the alternative, for a new trial. We review the district court's denial of a motion for judgment as a matter of law de novo using the same standards as the district court.[2] *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1505 (8th Cir.1992), *cert. denied* — U.S. —, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). A motion for judgment as a matter of law presents a legal question to the district court and this court on review: "whether there is sufficient evidence to support a jury verdict." *White v. Pence*, 961 F.2d 776, 779 (8th Cir.1992). We view the "evidence in the light most favorable

---

**2.** A motion for judgment as a matter of law now encompasses all motions denominated as motions for a directed verdict or for judgment notwithstanding the verdict. Fed.R.Civ.P. 50 (note). Hence, we will apply our cases discussing the standards for reviewing and analyzing motions for a directed verdict or judgment notwithstanding the verdict in analyzing this motion for judgment as a matter of law.

to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility." *Id.* Judgment as a matter of law is appropriate only when all of the evidence points one way and is "susceptible of no reasonable inference sustaining the position of the nonmoving party." *Id.*[3]

■■■ We apply a much more deferential standard in our review of a district court's denial of a motion for a new trial under Fed.R.Civ.P. 59(a). "The [district] court's decision will not be reversed by a court of appeals in the absence of a clear abuse of discretion." *Lowe v. E.I. DuPont de Nemours & Co.,* 802 F.2d 310, 310–11 (8th Cir. 1986) (citations omitted); *see also* 1 Steven Alan Childress & Martha S. Davis, *Federal Standards of Review* § 5.08, at 5–69 (2nd ed. 1992) ("The trial court's decision generally is committed to its discretion."). Where the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion "is virtually unassailable on appeal." *Peterson ex rel. Peterson v. General Motors Corp.,* 904 F.2d 436, 439–40 (8th Cir.1990); *Czajka v. Black,* 901 F.2d 1484, 1485 (8th Cir.1990). The key question is whether a new trial should have been granted to avoid a miscarriage of justice. *See Beckman v. Mayo Foundation,* 804 F.2d 435, 439 (8th Cir.1986) ("The district court can only disturb a jury verdict to prevent a miscarriage of justice.").

CAI contends that the district court should have granted judgment as a matter of law or a new trial for three reasons. CAI asserts that each of these arguments provides grounds for reversal of the district court's ruling on the motion for judgment as a matter of law or for new trial.

## III.

CAI first contends that the district court should have found, as a matter of law, that CAI had a qualified privilege against defamation liability under Minnesota law. The parties agree that Minnesota law governs in this diversity case and we review the district court's determinations of Minnesota law de novo. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

■■■ Minnesota law "recognizes a qualified privilege which exempts an employer from liability for defamatory statements about an employee so long as the statements are made in good faith and for a legitimate purpose." *Brooks v. Doherty, Rumble & Butler,* 481 N.W.2d 120, 124–25 (Minn.Ct. App.1992) (citing *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 257 (Minn.1980)). The communication may be privileged if:

> made upon a proper occasion, from a proper motive, and ... based upon reasonable or probable cause. When so made in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel. Actual malice must be proved, before there can be a recovery, and in the absence of such proof the plaintiff cannot recover.

*Id.* at 125 (quoting *Stuempges,* 297 N.W.2d at 256–57). This qualified privilege analysis encompasses a two-step approach to determining whether the privilege applies. First, to establish the existence of the privilege, the defendant bears the burden of proving the communication was: (1) made upon a proper occasion, (2) made from a proper purpose, and (3) based upon reasonable and probable grounds. *See id.; see also Lewis v. Equita-*

---

**3.** There is some uncertainty about whether federal courts should apply state law standards or federal law standards to motions for a judgment notwithstanding the verdict in diversity cases. *Compare Ross v. Black & Decker, Inc.,* 977 F.2d 1178, 1181 (7th Cir.1992) ("In diversity cases, state law governs the standard of review of a denial of a motion for judgment notwithstanding the verdict.") *cert. denied,* — U.S. ——, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993) *with Rotondo v. Keene Corp.,* 956 F.2d 436, 438 (3rd Cir.1992) (applying federal law standard). We need not be concerned with this dispute as the federal standard and the Minnesota standard are virtually identical. *Compare White,* 961 F.2d at 779 (must view the "evidence in the light most favorable to the prevailing party") *with Diesen v. Hessburg,* 455 N.W.2d 446, 452 (Minn.1990) (must "view the evidence in the light most favorable to the jury verdict") *cert. denied,* 498 U.S. 1119, 111 S.Ct. 1071, 1072, 112 L.Ed.2d 1177 (1991).

*ble Life Assur. Soc'y,* 389 N.W.2d 876, 890 (Minn.1986) (citing *Stuempges,* 297 N.W.2d at 257); *Wilson v. Weight Watchers of Upper Midwest,* 474 N.W.2d 380, 385 (Minn.Ct.App. 1991). Whether the employer had a proper purpose and whether the employer had a proper occasion in making a communication are always questions of law for the court to decide. *Brooks,* 481 N.W.2d at 125. Whether the employer had reasonable and probable grounds for making the statement is also generally a question of law for the court, "unless the evidence 'permits of more than one conclusion,' when the question becomes one of fact for the jury." *Id.* (citing *Wirig v. Kinney Shoe Corp.,* 461 N.W.2d 374, 380 n. 4 (Minn.1990)).

Once the defendant has established the existence of the qualified privilege, the burden shifts to the plaintiff to prove that the defendant abused that privilege by actual malice. *Lewis,* 389 N.W.2d at 890; *Stuempges,* 297 N.W.2d at 257; *Brooks,* 481 N.W.2d at 126. This question is for the jury. *Brooks,* 481 N.W.2d at 126 (citing *Lewis,* 389 N.W.2d at 890). The plaintiff can demonstrate actual malice by showing the defendant's "actual ill will, or a design causelessly and wantonly to injure plaintiff." *Id.* (quotation omitted). The plaintiff may prove malice "by evidence that leads to an inference that respondents knew the statements were false, by extrinsic evidence of personal ill feeling, or by intrinsic evidence such as exaggerated language, the character of the language used, or the extent of publication." *Id.* (citing *Frankson v. Design Space Int'l,* 394 N.W.2d 140, 144 (Minn.1986)).

CAI contends that the district court erred in instructing the jury on qualified privilege. Under the heading "Qualified Privilege—Actual Malice," the district court instructed the jury that:

> An employer has a qualified privilege to state reasons for the discipline or discharge of an employee. Such privilege may be lost if it is abused. Plaintiff may overcome this privilege by proving that the statements were made with actual malice toward the plaintiff. A statement is made with actual malice if the statement is made from ill will and improper motives or without cause and wantonly (recklessly or in disregard of right or consequences) for the purpose of injuring a person.
>
> Plaintiff may also overcome this privilege by proving that the employer did not have a reasonable or probable grounds for believing in the validity of the statement, even though hindsight might show the statement to be false.

(Appellant's App. at 96, Jury Instr. No. 28.) The special verdict form question corresponding to this instruction asked the jury whether CAI acted with "actual malice toward Keenan" in making the alleged defamatory statement. (Appellant's App. at 116, Question 18.) The jury answered yes.

CAI contends that the first paragraph of instruction 28 accurately states Minnesota law and demonstrates that the court had found that CAI established the existence of the privilege in this case. CAI argues that this instruction is erroneous, however, because the second paragraph allowed the jury to find CAI lost the privilege if the jury concluded that CAI did not have reasonable and probable grounds for stating that it fired Keenan for poor performance. CAI asserts that this jury instruction misstates Minnesota law by melding the "reasonable and probable grounds" inquiry (the third element of establishing the existence of the privilege) into the "actual malice" inquiry (a separate inquiry designed to determine whether CAI abused the privilege). CAI further argues that the jury must have relied on the improper portion of the instruction in finding CAI acted with actual malice because there is, in CAI's view, no evidence in the record to establish actual malice under its proper definition.

We agree that the language and structure of the jury instruction indicate that the district court improperly combined the reasonable and probable grounds inquiry into the actual malice inquiry. The language of the instruction permits the jury to find that CAI abused the privilege if CAI made the defamatory statement out of actual malice *or* without reasonable and probable grounds to believe the truth of the statement. The special verdict form provides a space only for the jury to find whether CAI acted with "actual

malice" in making the statement. (Appellant's App. at 116, Question 18.)

Under Minnesota law, the question of whether the employer had reasonable and probable grounds to believe the statement is an element of determining whether the privilege even exists. *See, e.g., Lewis,* 389 N.W.2d at 890; *Stuempges,* 297 N.W.2d at 257; *Brooks,* 481 N.W.2d at 125; *Wilson,* 474 N.W.2d at 384. Actual malice is a separate inquiry, which deals with whether the employer has abused the privilege, and should be undertaken only if the privilege already has been established. Whether actual malice existed does not entail an inquiry into whether the employer had reasonable and probable grounds to believe the statement, except to the extent such inquiry assists in determining whether or not the statements were known to be false when made.

We find, however, that the erroneous instruction was harmless error and is not grounds to disturb the jury verdict. *See* Fed.R.Civ.P. 61. We have explicitly stated that "errors in jury instructions are reversible only if they adversely affect the substantial rights of the complaining party." *Brewer v. Jeep Corp.,* 724 F.2d 653, 656 (8th Cir. 1983) (quoting *Hallberg v. Brasher,* 679 F.2d 751, 757–58 (8th Cir.1982)). Minnesota law is in accord. *Lewis,* 389 N.W.2d at 885 (reversal warranted only when erroneous jury instruction prejudiced appealing party). We find no prejudice or adverse effect on CAI's substantial rights.

Placing the reasonable and probable grounds issue in the actual malice portion of the analysis of qualified privilege did not harm CAI's substantial rights. First, we must point out that the district court never determined that the privilege existed under Minnesota law because the court expressly declined to rule on whether CAI proved that it had reasonable and probable grounds for making the statement that Keenan was fired for poor performance and instead decided to submit the issue to the jury. (Tr. 553–58, 564–68.) If the jury found CAI did not have

reasonable and probable grounds, then CAI was never entitled to the qualified privilege in the first place. This is the same net result as we have in this case where CAI asserts that the jury found "actual malice" under paragraph two of the instruction. Either way, CAI would not be entitled to the privilege. Therefore, while the instruction on qualified privilege technically misstates Minnesota law, it did not affect CAI's substantial rights and is harmless error.[4]

CAI contends that the error in instructing the jury cannot be harmless error because the district court should have decided the question of reasonable and probable grounds as a matter of law instead of submitting it to the jury. *Lewis,* 389 N.W.2d at 890 ("The court should not have submitted the issue of the company's entitlement to the qualified privilege to the jury."); *Wilson,* 474 N.W.2d at 385 ("The existence of a qualified privilege is a question of law and should not have been submitted to the jury."). The district court correctly pointed out, however, that Minnesota courts have recently found that the question of "reasonable and probable grounds" becomes a fact question for the jury when the trial evidence "permits of more than one conclusion." *Brooks,* 481 N.W.2d at 125 (quoting *Wirig,* 461 N.W.2d at 380 n. 4).

■ We find that the evidence submitted on the issue of reasonable and probable grounds "permits of more than one conclusion." CAI presented evidence from Joe Valley, the Vice President of the CAI Division where Keenan worked, that he had personally observed Keenan at work and thought that he did not spend enough time in front of clients; that most successful CAI salespersons made an average of 15 in-person calls per week on clients; that Keenan made nowhere near that amount: and that Keenan did not have "what it takes" to be a CAI salesperson. (Tr. 310–13.) Mary Lynn Yakel, the manager who fired Keenan, testified that she had heard from a CAI technical manager, who in turn had heard from someone else, that Keenan had said something in

---

4. We must point out that the instruction, as given by the court, actually shifted the burden of proving reasonable and probable grounds from CAI to Keenan. Hence, the instruction was actually harmful to Keenan and benefitted CAI by relieving CAI of its burden to prove reasonable and probable grounds.

front of a client that Yakel believed showed bad judgment. (Tr. 225.) Yakel also testified that based on a meeting she had with Keenan to talk about client turnover matters, she came to believe that Keenan did not have "what it takes" to be a CAI salesperson; and that she recommended terminating Keenan for poor performance the day she became his supervisor. (Tr. 220–222.) CAI also points out that Keenan signed exit interview forms indicating that he was fired for poor performance.

Keenan, however, also presented substantial evidence that CAI did not have reasonable and probable grounds for stating that he was fired for poor performance. His direct supervisor for the majority of the five weeks he worked for CAI, Derf Manthe, made positive statements about Keenan's performance. (Tr. 84–85.) Manthe testified that he thought Keenan was coming along quite well at the time he was fired, that he thought Keenan had incredible tenacity, that he thought Keenan spoke well, and that he knew of nothing that Keenan had done wrong. (Tr. 84–85.) Manthe also stated that he did not agree that Keenan spent too much time sitting around the office. Keenan also submitted evidence rebutting Yakel's statement in an affidavit submitted before trial that she had heard from Manthe that Keenan's performance was poor. Keenan pointed out that this statement is in direct conflict with her deposition and trial testimony, when she admitted Manthe never told her Keenan's performance was poor. (Tr. 227–30.) Yakel testified that in the only conversation she had with Manthe about Keenan prior to firing Keenan, Manthe told her very positive things about Keenan and that Manthe thought Keenan "could be a good computer software salesperson." (Tr. 223–24.) Keenan testified that Yakel told him that he was fired in part because he did not have a word processing background, which CAI knew when they hired him. (Tr. 376, 490–91.) Manthe testified that he had heard this was a reason for Keenan's firing as well. (Tr. 126.)

Keenan also notes that Minnesota courts generally have found, as a matter of law, that reasonable and probable grounds exist only when "the evidence showed that investigative steps had been taken, including personal questioning of the affected employee, in an effort to ascertain the accuracy of statements made about the employee's conduct." *Wirig,* 461 N.W.2d at 380. Keenan argues CAI's statement that he was fired for poor performance was made without a sufficient investigation as to whether it was true.[5] Yakel admitted, for example, that in investigating Keenan's performance the only person she talked to specifically about Keenan's performance was Derf Manthe, who said good things about Keenan. (Tr. 224.) Keenan also asserts that it was impossible even to evaluate the quality of his performance sufficiently given the short amount of time he had been working the job.

We find that this evidence "permits of more than one conclusion." We find, in particular, that the evidence "permits of more than one conclusion" on the question of whether CAI made an adequate investigation to support its statement that Keenan was fired for poor performance. Hence, we conclude that it was permissible under Minnesota law for the district court to submit the reasonable and probable grounds issue to the jury.

After this case was submitted, the Minnesota Court of Appeals decided *McGrath v. TCF Bank Savings,* 502 N.W.2d 801 (Minn. Ct.App.1993). The court held that the trial court correctly granted the employer a qualified privilege. The court specifically found that the only managers who stated that the employee was a troublemaker had personally observed his work, and based on those observations they did not need to investigate the accuracy of their statements about the employee any further. *Id.* at 809. The court concluded, as a matter of law, that the managers had reasonable and probable grounds

---

**5.** We reject CAI's argument that it did not need to perform an investigation because it is impossible to "objectively verify" that Keenan performed poorly. We find nothing in Minnesota law which requires an investigation into the truth of the statement only when it is "objectively verifiable." We decline to write such a conclusion into Minnesota law.

for making those comments. *Id.*[6]

*McGrath* does not change our decision in this case. Here, Yakel and Valley testified that they personally observed Keenan in forming the belief that his performance was poor. However, unlike *McGrath,* Yakel and Valley's personal observations were minimal and a dispute exists about whether those minimal observations could have provided a sufficient basis for concluding his performance was poor without further investigation. Their conclusions were especially questionable given the fact Manthe testified that Keenan's performance was not poor, that Keenan was progressing nicely, and that he had done nothing wrong. Moreover, Yakel admitted Manthe told her Keenan was doing a good job and Keenan testified that Yakel told him he was fired for lack of a data processing background, not poor performance. These facts leave the question of reasonable and probable grounds much less certain than in *McGrath.*

Moreover, in *McGrath,* the court found the evidence pointed to only one conclusion on reasonable and probable grounds and decided the question as a matter of law. As we found above, however, the evidence in this case certainly "permits of more than one conclusion." Simply because the facts in *McGrath* pointed only to one conclusion on reasonable and probable grounds does not mean that there also is only one conclusion in this case. Hence, we find that *McGrath* does not require reversal in this case.[7]

We need not reach CAI's argument the jury could not have found "actual malice" under the correct definition in paragraph one of the instruction because there is allegedly no evidence whatsoever of actual malice in the record. We have already found that there was sufficient evidence for the jury to find that CAI was not entitled to the qualified privilege to begin with because CAI lacked reasonable and probable grounds for stating that Keenan was fired for poor performance. Accordingly, we conclude that trial court properly denied CAI's motion for a judgment as a matter of law on the issue of qualified privilege to defamation liability.

## IV.

■ CAI's second argument is that the trial court erred in denying CAI's motion for a new trial on the defamation damages award. CAI argues that the damages the jury awarded for defamation were excessive as a matter of law and that the court failed to instruct the jury properly on how to determine damages on the defamation claim. We find that the trial court committed no error in denying the motion for new trial on defamation damages.

"A district court's order denying a motion for a new trial on the issue of damages will not be reversed absent a showing that the district court abused its discretion." *Johnson v. Cowell Steel Structures, Inc.,* 991 F.2d 474, 476 (8th Cir.1993). "The law of the forum state guides us when determining the adequacy of the jury's verdict." *Id.* at 477.

■ In Minnesota, defamatory statements about a person's business reputation constitute defamation per se and give rise to a presumption of general damages. *Stuempges,* 297 N.W.2d at 259. In such cases, "appellate courts tend to leave the amount to be awarded to the jury's discretion." *Id.* The damages awarded will be set aside as excessive only when there is "evidence of [gross] prejudice, partiality, or corruption on the part of the jury." *Froslee v. Lund's State Bank,* 155 N.W. 619 (Minn. 1915). Stated another way, "The inquiry is, were the damages awarded by the verdict so unreasonable and excessive as to appear to have been given under the influence of pas-

---

6. The court also held that an employer's statement that the employee was a "troublemaker" was not actionable for defamation because it lacked precision, specificity, and verifiability. *Id.* at 808. CAI, however, did not raise an issue in this appeal about whether the statement that Keenan was fired for "poor performance" was actionable as defamation.

7. CAI also asserts that the district court should not have submitted the reasonable and probable grounds issue to the jury absent a request from Keenan. While the court is not required to submit the question to the jury absent a request, Minnesota law does not prohibit the court from submitting the question where there is no request. Hence, we find this argument uncompelling.

sion or prejudice, so exorbitant as to shock the sense of the court...." *Blume v. Scheer,* 83 Minn. 409, 86 N.W. 446, 447 (1901).

We find no such gross prejudice, partiality, or corruption in this case. Likewise, the damages award does not shock the conscience of the court. The damages award is not excessive and the trial court committed no error in refusing to remit the award or grant a new trial.

■ CAI also argues that the district court erred by failing to specifically instruct the jury, as CAI requested, that the award of defamation damages could not be based on speculation. CAI argues that without such an instruction the jury was allowed to set damages "by mere whim." We disagree.

District courts are "not bound to give the jury instruction requested by the litigants" but must "instruct the jury in the form and language it considers a fair and adequate presentation of [the] law." *Financial Holding Corp. v. Garnac Grain Co.,* 965 F.2d 591, 594–95 (8th Cir.1992). We find that taken as a whole the jury instructions provide a fair and adequate presentation of how to calculate damages on the defamation claim. The district court used the Minnesota pattern jury instruction on presumed damages for defamation. The district court also gave a general instruction that Keenan was required to prove all elements of his case by a preponderance of the evidence. We assume the jury applied this standard to the calculation of damages as well. Finally, the court did instruct the jury in the promissory estoppel (wrongful termination) damages instruction that "[d]amages must be proven by a preponderance of the evidence and must not be based on speculation or guess." (Appellant's App. at 87, Jury Instr. No. 20.) While the instruction fell under the heading of the promissory estoppel section, the quoted language addressed only "damages" and was not limited to promissory estoppel damages. Hence, we conclude that taken as a whole the instructions provided a fair and adequate presentation of how the jury should calculate damages on the defamation claim.

## V.

■ CAI's final argument is that the district court should have entered judgment as a matter of law for CAI on Keenan's claim for fraudulent misrepresentation. CAI contends that Keenan presented insufficient evidence that CAI fraudulently induced Keenan to take the job and that the fraudulent inducements caused the damages Keenan asserts.

Keenan claimed CAI fraudulently induced him to leave his old job and to accept the sales position with CAI through false statements made by Derf Manthe. Keenan asserted that Manthe falsely described the job qualifications, the sales territory Keenan would receive, the commissions Keenan could expect to receive based on a previous year's figures, and the amount of training and the length of the training period CAI would provide for Keenan. CAI asserts that Keenan introduced insufficient evidence to support the jury's finding that CAI made these alleged misrepresentations to Keenan.

We disagree. "It is within the province of the trier of fact to determine whether a defendant has misrepresented material facts...." *Barr/Nelson, Inc. v. Tonto's Inc.,* 336 N.W.2d 46, 51 (Minn.1983). Here, the jury found CAI had knowingly made at least one of the misrepresentations with the intent to deceive. We must view the evidence in the light most favorable to Keenan and should reverse only if the evidence does not reasonably support the verdict. *Id.; White,* 961 F.2d at 779.

Keenan presented evidence that Yakel told him that part of the reason he was fired was that he did not have a data processing background and that without such a background it would take too long to train him. (Tr. 376, 490–91, 248–49.) Manthe also testified that he had heard that this was part of the reason Keenan had been fired as well. (Tr. 126.) While CAI introduced evidence that a data processing background was not a job requirement, including evidence that Keenan's replacement at CAI had no data processing background, we conclude that the jury was entitled to believe Keenan's evidence and conclude that a data processing background was a requirement for Keenan to have the

job. Hence, we find that the evidence, viewed in a light most favorable to Keenan, was sufficient to establish fraudulent inducement.

CAI next argues that any misrepresentations made to Keenan could not have been the proximate cause of the damages Keenan alleged. In Minnesota, it is also generally "within the province of the trier of fact to determine ... whether the misrepresentation proximately caused plaintiff's injury." *Barr/Nelson*, 336 N.W.2d at 51. The jury found that the misrepresentations were the cause of Keenan leaving his old job to join CAI. Again, viewing the facts in a light most favorable to Keenan, we find that the evidence was sufficient to support the jury's verdict.

CAI asserts that none of the misrepresentations Keenan alleged bear any proximate or foreseeable relationship to his termination as a CAI employee. CAI points out that in *Rognlien v. Carter*, 443 N.W.2d 217, 221 (Minn.Ct.App.1989), the Minnesota Court of Appeals held that an employee's termination was not a proximate or foreseeable result of a misrepresentation by the employer that the employee relied on in accepting a job offer. CAI argues that we should follow *Rognlien* and find that any alleged misrepresentations in this case were not the proximate cause of Keenan's termination.

We find this case distinguishable from *Rognlien*. In *Rognlien*, the alleged misrepresentation by the employer was that the employer owned 80% of the business' stock. Rognlien's termination for inadequate performance bore no relationship to the misrepresentation. *Id.* In this case, the facts, viewed in a light most favorable to Keenan, demonstrate a relationship between the original fraudulent misrepresentation and the later termination. If, for example, the jury concluded that a data processing background was required for the job and CAI terminated Keenan in part because he did not have that background, then the alleged misrepresentation that the job did not require a data processing background would directly relate to his termination. While this evidence does not provide a strong connection between Manthe's alleged misrepresentations and Keenan's ultimate termination, it is sufficient to sustain the verdict on this claim.

We also point out that this case is similar to *Brooks*, where the Minnesota Court of Appeals found that a former employee suing his employer proved loss of income resulting from fraudulent inducement in entering into the employment contract. The court found plaintiff's evidence supported his allegation "that the fraud perpetrated by the [defendants] caused him to enter into a situation that ultimately caused emotional distress, damage to his personal and professional reputation, [and] lost income" and was sufficient to prove his damages for the fraudulent misrepresentation. *Brooks*, 481 N.W.2d at 128. Like this case, the causal link between the misrepresentations and the damage is established by proof that the misrepresentations caused Keenan to enter into a situation that "ultimately" caused damage to his reputation and loss of income. Here, Keenan presented sufficient evidence that he has suffered a substantial decrease in income from the job he held when he was hired at CAI and that he suffered damage to his professional reputation.

## VI.

The trial court committed no error in denying CAI's post-trial motions for judgment as a matter of law or for a new trial. Accordingly, we affirm the judgment of the district court.