United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-4122/98-1081EM

_____

Rockwood Bank,               *
                                        *

  Defendant-Appellant/Cross-Appellee, *
                                        * Appeal from the United States
      v.                        * District Court for the Eastern
                                        * District of Missouri
M. Michael Gaia,         *
                                        *

Plaintiff-Appellee/Cross-Appellant.    *

_____

Submitted:  November 16, 1998
Filed:  March 15, 1999

_____

Before RICHARD S. ARNOLD and FAGG, Circuit Judges, and DAWSON[1], District
Judge.

_____

DAWSON, District Judge.

Rockwood Bank appeals following a judgment in a defamation action brought
by a bank employee after the president of the bank made certain statements about the
employee to bank examiners during routine bank examinations.  The employee, M.

_____

[1] The Honorable Robert T. Dawson, United States District Judge for the
Western District of Arkansas, sitting by designation.

Michael Gaia, who had been demoted by the bank, sought other employment and was listed as the proposed president within the charter application forms for a new bank. Because of the comments made by the president that were contained within the reports of bank examiners, the Missouri Commissioner of Finance refused to grant the new bank charter as long as Gaia was listed as president. Gaia filed suit for age discrimination and defamation; a jury found for the bank on the discrimination claim but awarded Gaia actual and punitive damages on the slander claim.

For reversal, Rockwood Bank contends that because of the very nature of bank examinations, its communications with bank examiners are protected by either an absolute or qualified privilege entitling the bank to immunity from civil liability. Rockwood Bank also contends that the communications were not defamatory. For reversal on the cross-appeal, Gaia contends that the district court's instructions to the jury on the issues of illegal age discrimination were not correct statements of the law. We reject the contentions of both and AFFIRM the decision of the district court.

Jurisdiction of this court is proper under the provisions of 28 U.S.C. §§ 636(c)(3), 1291 and 1294.

## I. Factual Background

In March, 1992, the Board of Directors of Rockwood Bank voted to hire Gaia as executive vice president of the bank over the objections of the bank president. At the time Gaia was hired, he was fifty-five years old and had twenty-one years of experience as a bank officer and fifteen of experience as a bank president. Gaia was considerably older and more experienced than the acting president of Rockwood Bank. According to Gaia, the bank president told him that he had wanted to hire someone younger and less experienced than Gaia because such a person would have been easier to train. From the beginning of their professional relationship, tensions existed between the bank president and Gaia, with the bank president continually criticizing and expressing dissatisfaction with Gaia's performance. The record

contains evidence that the bank president did not provide Gaia with a specific job description or duties and responsibilities; that he instructed Gaia to perform clerical tasks not typically assigned to senior level executives and failed to provide him with training; and that he directed Gaia not to perform other clerical tasks which Gaia deemed necessary to process customers' business. In addition, Gaia's personnel file was filled with memoranda and notes regarding his performance and his file was shown to be much more detailed and extensive than the file of any other bank employee. Despite the frequent fault-finding by the bank president, Rockwood's Board of Directors appeared satisfied with Gaia's performance and granted him salary and benefit increases and stock options every year that Gaia served as executive vice-president.

In September 1994, the bank president was able to convince the Board that Gaia was not fulfilling his duties in an acceptable manner. Despite Gaia's attempts to defend himself and persuade the Board that he was being wrongly disparaged by the bank president, the Board gave Gaia an ultimatum either to accept a demotion or be terminated. Gaia agreed to the demotion. However, the working relationship between Gaia and the bank president remained strained and Gaia eventually came to believe that his days at Rockwood Bank were numbered. In the summer of 1995, Gaia began looking for other employment. During this time, Gaia was approached by a group of investors who were organizing a new bank about the possibility of naming Gaia as the president of the new bank. In due course, Gaia was listed as the proposed president of the new bank seeking to organize under a state banking charter.

At or about the time of Gaia's demotion, routine bank examinations were conducted by the FDIC and Missouri Division of Finance. During the course of these examinations, the bank examiners discussed with Rockwood's president the job performance of Gaia and other employees. While the bank president's comments were contained within the confidential section of both reports, they were not included

-3-

in the reports of examination made available to the bank, its board, the president, or Gaia. The comments were contained in the full reports of both examinations, and it was the full reports that the Missouri Bank Commission reviewed in connection with the application for the new bank charter which proposed Gaia as its president.

The language concerning Gaia in the report of the FDIC examination that was conducted in June 1995 was as follows, to-wit:

> The minutes of a Personnel Committee meeting on May 25, 1995, disclosed that President Lunt was recommending that Vice President Mike Gaia be fired. When questioned, President Lunt stated that Mr. Gia [sic] had not lived up to expectations since his employment. Mr. Lunt felt he would have the Board's support in this matter and hoped to be able to interview shortly for an Executive Officer who would effectively take Mr. Gaia's place.

The language within the report of the Missouri Division of Finance examination conducted in January 1995 was similar and was as follows, to-wit:

> Mike Gaia has been demoted from Executive Vice President to Vice President. His primary responsibility is now business development. His efforts to complete assigned tasks such as policy revisions and implementation of the loan grading system have failed. President Lunt appeared very displeased with Mr. Gaia's weak performance and stated that he has an indefinite probationary period to produce results. In addition, President Lunt stated that he has created much animosity among the Board of Directors.

Based largely upon these confidential comments, the Missouri Bank Commission reached a decision and advised the directors of the newly formed bank that their charter would be approved only if Gaia was not president. Gaia was then offered a lesser position with the new bank. On or about December 8, 1995, Gaia left his employment at Rockwood Bank and a few weeks later took the lesser position

offered at the new bank. Gaia contends that Rockwood's president fired him without the approval of the Board of Directors, while Rockwood contends that Gaia resigned to accept the offer of other employment.

The litigation by Gaia was filed following the commencement of his employment at the newly formed bank. With regard to the claim of age discrimination, the issues of pretext concerning the bank's proffered explanation for Gaia's demotion and whether Gaia voluntarily resigned or was discharged from his position at Rockwood Bank were thoroughly litigated. At the close of evidence, the district court gave the following instruction to the jury:

> Plaintiff must prove by a preponderance of the evidence that his age was the determining factor in the Defendant's decisions to demote and discharge him. Age is the determining factor if Plaintiff would not have been demoted and discharged except for his age.

The jury returned a verdict in favor of Rockwood Bank on Gaia's age discrimination claims and in favor of Gaia on the defamation claim. The jury awarded Gaia $200,000 in actual damages and $75,000 in punitive damages upon making a finding of actual malice.

## II. Discussion
### A. Absolute or Qualified Immunity from Liability

The first issue the Court shall address is whether any privilege exists that would shield a bank, its officers or board members from civil liability for allegedly defamatory comments made to bank examiners during the course of a routine examination of the bank. Rockwood Bank contends that the district court erred when it failed to recognize that the bank is entitled to immunity from liability for statements made to bank examiners in the course of routine bank examinations because those statements are protected by either an absolute or qualified privilege. This is a case

of first impression, and amicus briefs have been filed by the Missouri Commissioner of Finance, the Missouri Bankers Association, and the Federal Deposit Insurance Corporation, who argue that public policy must allow full and complete comment and disclosure in connection with any bank examination without fear of litigation.

Although there are some federal implications because of the involvement of the Federal Deposit Insurance Corporation (FDIC), Missouri law governs Gaia's slander claim against Rockwood as well as the claim of absolute or qualified privilege for the statements made by Rockwood's president to the Missouri Division of Finance. *In re IBP Confidential Bus. Documents Litigation,* 797 F.2d 632, 639 (8th Cir. 1986)(citing *Webster v. Sun Co.,* 790 F.2d 157, 160 (D.C.Cir. 1986)). Whether a statement is absolutely privileged is a question of law which we review de novo. *Scott Fetzer Company v. Williamson,* 101 F.3d 549, 553 (8th Cir. 1996); *Wright v. Over-The-Road & City Transfer Drivers, Helpers, Dockmen and Warehousemen*, 945 S.W.2d 481, 490 (Mo.App. 1997).

Missouri courts adhere to the common law principle that "statements made during the proceedings of a judicial or quasi-judicial body are absolutely privileged if they are relevant to the issues before the body." *Remington v. Wal-Mart Stores, Inc.,* 817 S.W.2d 571, 574 (Mo.App. 1991)(citations omitted); *see also Hester v. Barnett*, 723 S.W.2d 544 (Mo.App. 1987); *Pulliam v. Bond*, 406 S.W.2d 635 (Mo. 1966). Absolute immunity for participants in a judicial or quasi-judicial process is "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). The question, therefore, becomes whether routine bank examinations may be considered judicial or quasi-judicial proceedings entitling participants to absolute immunity. In reaching a determination of this issue, it is appropriate to inquire into the characteristics of the particular examinations that took place at Rockwood Bank to see if they were typical of the judicial process in order to warrant absolute immunity for those who took part

in them.

In determining if a particular proceeding is quasi-judicial in nature, Missouri courts are guided by whether the administrative agency exercised "such traditional judicial powers as the conducting of hearings at which witnesses may be summoned and examined, documents subpoenaed, and judgments handed down . . ." *Wright, Id. at* 491, quoting *Remington, Id. at* 574 (citations omitted). We have previously held that the term "quasi judicial" applies "where the function of the administrative body under consideration involves the exercise of discretion in the application of legal principles to varying factual situations and requires notice and hearing." *M.C. Mock v. Chicago, Rock Island and Pacific Railroad Co.,* 454 F.2d 131,134 (8th Cir. 1972). In *Butz*, the Supreme Court noted that "the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of unconstitutional conduct. . . .Advocates are restrained not only by their professional obligations, but by the knowledge that their assertions will be contested by their adversaries in open court. Jurors are carefully screened to remove all possibility of bias. Witnesses are, of course, subject to the rigors of cross-examination and the penalty of perjury." *Butz*, 438 U.S. at 512, 98 S.Ct. at 2913.

While Missouri case law recognizes the existence of absolute privilege in some administrative proceedings, it has not extended that privilege as far as the Appellant now seeks. In *Li, et al. v. Metropolitan Life Insurance Co., Inc.*, 955 S.W.2d 799 (Mo. App. 1997), it was held that the allegedly defamatory contents of a letter written by an insurance agent and provided to the Missouri Department of Insurance pursuant to an inquiry into specific allegations of misrepresentation by the agent was protected by absolute privilege. The court reasoned that the inquiry by the Department constituted a quasi-judicial function because the Department was investigating specific complaints about the agent that were brought by the appellants themselves.

We recognize that both the FDIC and the Missouri Division of Finance possess quasi-judicial powers in that they may administer oaths, compel the attendance of witnesses and the production of records and other documents.[2] In addition, they both have statutory authority to issue cease and desist orders.[3] It is also widely accepted that the reports prepared by the examiners are protected by law from disclosure.[4] However, we are of the opinion that the routine bank examinations conducted at Rockwood Bank in 1995 should not be accorded status as quasi-judicial proceedings. While the examinations were conducted according to law, they were not inquiries instituted after a determination that the bank may have been engaging in unsafe or unsound practices. Nor were the examinations commenced pursuant to specific complaints or requests for investigation. There is no evidence that either of the bank regulatory agencies was even contemplating the initiation of a quasi-judicial

---

[2]Mo.Rev.Stat. §§ 361.130, 160 (1994); 12 U.S.C. §§ 1818(n), 1820(c); 12 C.F.R. §§ 308.144 (1998) *et seq.*

[3]Mo.Rev.Stat. § 361.260 (1994); 12 U.S.C. § 1818(b) & (c).

[4]*See* Mo.Rev.Stat. § 361.070 (1994). The bank examination privilege is a qualified privilege which shields **from discovery** agency opinions or recommendations, and it is discussed in some detail within *In Re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630 (D.C. Cir. 1992). In that case, the court stated:

> Because bank supervision is relatively informal and more or less continuous, so too must be the flow of communication between the bank and the regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged. . .
>
> Nonetheless, the discovery of bank examination information is not absolutely precluded.

Id. at 634 (Citations omitted). See also, *In Re Mid Atlantic Corporation Shareholder Litigation*, 1994 WL 750664, 2 (D.C. Cir. 1994).

proceeding against the bank. As such, the routine examinations of Rockwood Bank by the Missouri Division of Finance and the FDIC may not even be considered preliminary steps to quasi-judicial proceedings. We also think it is important to note that the safeguards usually associated with judicial proceedings were not present during the examinations: no hearing was noticed or held; the persons whose comments were solicited were not under oath; and there was no opportunity for cross-examination. We hold that a routine bank examination does not qualify as a quasi-judicial proceeding and that statements made in the course of such examinations are not protected by absolute privilege.[5]

We do not believe that, by declining to extend absolute immunity to those who provide statements to bank regulators during routine examinations, the free flow of information necessary for effective bank regulation will be unduly hindered. While the public policy concerns raised by the appellant and others are well taken and important, they are suitably met by affording qualified immunity to the participants.

In Missouri, qualified immunity may be available for a person who makes a statement subject to a duty to someone who has a corresponding duty. *Rice v. Hodapp*, 919 S.W.2d 240, 244 (Mo. 1996); *Carter v. Willert Home Products*, 714

---

[5] Following oral argument in this matter, the Appellant Rockwood Bank submitted to the Clerk an additional citation, as is permitted by Rule 28(j) of the Federal Rules of Appellate Procedure. Rockwood Bank contends that 31 USC § 5318(g)(3) affords absolute immunity to the bank in this case. Section 5318(g)(3) is included within the "money-laundering" statutes and is designed to protect the bank, its board of directors, officers, employees, or agents, from civil liability in connection with the disclosure of information regarding "any suspicious transaction relevant to a possible violation of law or regulation." The sole basis for the defamation claim was the language contained within the examination reports. We do not find that the record supports the argument that the bank president's statements were intended to disclose a suspicious transaction relevant to a possible illegality. Therefore, this section is of no assistance to the bank under these circumstances.

S.W.2d 506, 513 (Mo. 1986). Qualified immunity will protect the person from liability for making false or defamatory statements if it can be shown that the comments were made without actual malice. Actual malice means "that the statements were made with knowledge that they were false or with reckless disregard for whether they were true or false at a time when defendant had serious doubts as to whether they were true." *Carter,* 714 S.W.2d at 512. With this definition in mind, those providing information to bank regulators only have a duty to refrain from making statements that are known to be false or with reckless disregard for their truthfulness. We find that, under these circumstances, qualified immunity will facilitate the free flow of communications between bank regulators and those participating in routine examinations and at the same time shield individuals from malicious defamation.

Rockwood Bank contends that the bank president had a legal obligation to fully cooperate and disclose information to the bank examiners and, therefore, those communications would be subject to a qualified immunity for claims of defamation, citing *Luan v. Union Electric Co.*, 166 S.W.2d 1065 (Mo. 1942). However, before the doctrine of qualified immunity will shield the bank from liability for the allegedly defamatory comments and responses of the bank president, it must be determined that the bank president made the comments to the bank examiners without actual malice.

In this case, the jury specifically found malice on the part of Rockwood Bank. The following instruction was given to the jury:

> Instruction No. 23: If you find the issues in favor of Plaintiff, and if you believe that Defendant made the statements, with knowledge that they were false or with reckless disregard for whether they were true or false at a time when Defendant had serious doubt as to whether they were true, then in addition to any damages to which you find Plaintiff entitled under the foregoing paragraph, you may award Plaintiff an additional

-10-

amount as punitive damages in such sum as you believe will serve to punish Defendant and to deter it and others from like conduct.

In Instruction No. 24, the trial court instructed the jury that:

[t]he burden is upon Plaintiff to cause you to believe by clear and convincing evidence the propositions of fact required for the recovery of punitive damages as submitted in . . . Instruction No. 23.

By way of response, in its verdict the jury awarded $200,000 in actual damages and $75,000 in punitive damages.

While the instruction admittedly was directed toward the damage portion of the plaintiff's complaint, the jury nonetheless concluded that malice was present in connection with the comments made to the bank examiners. Since malice was found, the comments made by the bank president to the examiners would not qualify for qualified immunity. We find that the district court did not err by deciding that the comments made by the bank president were not protected by absolute or qualified privilege. Accordingly, the judgment of the district court is affirmed on this issue.

## B.  Evidence From Which the Jury Could Have Found Malice.

The second issue Appellant presents for appeal is whether the district court erred by denying the appellant's renewed motion for judgment as a matter of law. In addition to its contention that the bank president's comments were protected by an absolute or qualified privilege, Appellant argues that if the comments were protected by a qualified privilege, then there was insufficient evidence from which the jury could have found that the comments were made with actual malice.

The denial of a motion for judgment as a matter of law is subject to de novo review by this court. *Denesha v. Farmers Ins. Exchange*, 161 F.3d 491, 497 (8th Cir. 1998)(citations omitted). The appellate court will not reverse a jury verdict for insufficient evidence unless "after viewing the evidence in the light most favorable to the verdict, it concludes that no reasonable juror could have returned a verdict for the non-moving party". *Id*. Further, in reviewing a denial of a motion for judgment as a matter of law, the court must, 1) consider the evidence in the light most favorable to the non-moving party, 2) assume that all conflicts were resolved in favor of the non-moving party, 3) assume as proved all facts that the non-moving party's evidence tended to prove, 4) give the non- moving party the benefit of all favorable inferences that may reasonably be drawn from the proved facts, and 5) deny the motion unless all the evidence points one way and is susceptible of no reasonable inferences sustaining the non-moving party's position. *Denesha*, 161 F.3d at 497 (citations omitted).

The Appellant submits that since the jury rejected Gaia's claim that the bank president harbored ill-will towards Gaia solely because of his age, the jury had no factual basis for attributing any bad motives at all to the bank president. This logic misses the point. A finding of actual malice in the context of determining whether qualified immunity protects Rockwood Bank from liability does not necessarily depend upon a demonstration of a motive in the form of ill-will or animosity. As previously discussed, actual malice means that the statements were made by the bank president when he knew them to be false or with reckless disregard for their truthfulness at a time when he had serious doubts as to whether they were true. Although the jury did not believe that age discrimination was the motive behind the

defamatory comments, it was nonetheless reasonable for the jury to conclude that the bank president made statements about Gaia's job performance that he knew were false or with reckless disregard for their truthfulness. Reviewing the evidence in a light most favorable to Gaia, there was ample evidence from which the jury could have inferred both motive and actual malice. There was evidence that Gaia was hired over the bank president's objections, and that he gave Gaia vague and confusing instructions about his job duties as executive vice-president in an effort to build a case of incompetence against Gaia. In spite of Gaia's assertions that his job performance was more than adequate which he supported with empirical data, the bank president persisted in his criticisms of Gaia for not meeting expectations and placed numerous memos and notes in Gaia's personnel file in order to bolster the perception of Gaia's allegedly lackluster performance. There was no dispute that the bank president made the comments to the bank examiners, and the jury found that either the bank president knew he was making false statements about Gaia's job performance or that he acted with reckless disregard for the truth. Therefore, the district court did not err in denying appellant's renewed motion for judgment as a matter of law made on the basis that there was no proof of malice.

### C. Whether the Allegedly Slanderous Remarks Were Defamatory.

Appellant's next point on appeal is that the district court erred by denying Appellant's motion for a new trial. We apply a deferential standard in our review of a district court's denial of a motion for a new trial. "'The [district] court's decision will not be reversed by a court of appeals in the absence of a clear abuse of discretion.'" *Keenan v. Computer Associates Intern., Inc.,* 13 F.3d 1266, 1269 (8th Cir. 1994)(citing *Lowe v. E.I. DuPont de Nemours & Co.,* 802 F.2d 310, 310-11 (8th

Cir. 1986)(citations omitted)). The key question is whether a new trial should have been granted to avoid a miscarriage of justice. *Keenan,* 13 F.3d at 1269 (citations omitted).

Appellant contends that the jury's verdict was against the weight of the evidence as the allegedly slanderous comments made by Rockwood's president were not defamatory as a matter of law. In Missouri, whether language is defamatory and actionable is a question of law to be decided by the court, and the court must determine whether a statement claimed to be slanderous is reasonably capable of defamatory meaning. *See Ampleman v. Scheweppe*, 972 S.W.2d 329, 331 (Mo.App. E.D. 1998). "In exercising this function trial and appellate courts are required 'to determine whether the communication reasonably conveyed the meaning ascribed to it by plaintiff and, if so, whether the meaning was defamatory in character.'" *Ampleman,* 972 S.W.2d at 331 (citing *Carey v. Pulitzer Publishing Co.*, 859 S.W.2d 851, 855 (Mo.App.E.D. 1993).

Comments that tend to harm a person in his business or profession are one of the traditional categories of slander per se. *Carter v. Willert Home Products, Inc.,* 714 S.W.2d 506, 509 (Mo. 1986). The words used by the defendant must impute to the plaintiff a lack of knowledge, skill, capacity, or fitness to perform his duties. *Brown v. Kitterman,* 443 S.W.2d 146, 154 (Mo. 1969). To be actionable, the words "must strike at a person's professional competence." *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 311 (citation omitted). A statement that "tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him" is defamatory in character.

-14-

*Kennedy v. Jasper,* 928 S.W.2d 395, 399-400 (Mo.App.E.D. 1996). We find that the district court did not abuse its discretion in finding that the comments made by the president of Rockwood Bank reasonably conveyed the meaning ascribed to them by plaintiff, *i.e.,* that Gaia lacked the knowledge, skill, capacity or fitness to perform the duties of executive vice president. It is clear that the meaning of the words is defamatory and actionable.

Rockwood claims that the court erred in denying its motion for a new trial because some of the objectionable remarks are true, and that the others are constitutionally protected expressions of opinion. "Whether an alleged statement is capable of being treated as an opinion or as an assertion of fact is a question of law for the trial court." *Nazeri,* 860 S.W.2d at 314. "The test to be applied to an ostensible 'opinion' is whether a reasonable fact finder could conclude that the statement implies an assertion of objective fact." *Id.* at 314 (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21, 110 S.Ct. 2695, 2707, 111 L.Ed.2d 1 (1990)). The Missouri Supreme Court has also held that the "issue of falsity relates to the defamatory facts implied by a statement--in other words, whether the underlying statement about the plaintiff is demonstrably false." *Nazeri,* 860 S.W.2d at 314. We find that the district court did not abuse its discretion in concluding that there was a question of fact as to whether some of the statements made by the bank president about Gaia's job performance were true. We also find no abuse of discretion by the district court in finding that the "opinions" offered by the bank president implied assertions of objective fact regarding Gaia's abilities as a bank officer.

Appellant next contends that the district court erred in denying its motion for

a new trial because there was no causal link between the slanderous comments and Gaia's damages. There was no abuse of discretion when the district court found that the evidence supported the jury's determination that the decision of the Missouri Division of Finance to approve the new bank charter only if Gaia's name was withdrawn as the proposed president was based upon the slanderous comments contained in the reports of the bank examiners. Therefore, the denial of Rockwood's motion for a new trial is affirmed in all respects on the defamation issue.

### D.     Appropriate Jury Instruction as to the Law on Pretext.

The sole remaining issue for determination is whether the jury was properly instructed as to the law on pretext in the age discrimination claims brought by Appellee Gaia. The trial court has broad discretion in instructing the jury. *Cross v. Cleaver*, 142 F.3d 1059, 1067 (citing *Ryther v. KARE 11*, 108 F.3d 832, 846 (8th Cir. 1997)(*en banc*)(citations omitted)). When reviewing an instruction on appeal, the appellate court must decide whether the instruction fairly and adequately states the applicable law. *Id.* We have previously held, and do so again today, that in a discrimination case where pretext is alleged, the plaintiff must prove that the prohibited factor was the determining factor, not merely a determining factor, in the adverse employment decision. *See Foster v. University of Arkansas,* 938 F.2d 111, 115 (8th Cir. 1991). This was not a mixed-motives case. The issue for the jury was whether the adverse employment action was caused by the plaintiff's age or by legitimate business factors. As we understand the record, these motives were mutually exclusive. In addition, we note that the instruction in question carefully advised the jury that "[a]ge is the determining factor if Plaintiff would not have been demoted and discharged except for his age." This is a correct statement of the law.

Accordingly, we affirm the district court's denial of Gaia's motion for a new trial.

## III. Conclusion

For the reasons stated above, the judgment and orders of the district court are AFFIRMED in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT