# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1754

_____

| | | |
|---|---|---|
| Rickey Jones; Tammy Henderson; Deona Griffo, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| Brianna Henderson, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| Alonzo Henderson; Marlon Henderson; John Pitts; Maxine Pitts; Lesley Moore; Tami Moore, | * | |
| | * | Appeal from the United States |
| | * | District Court for the District of |
| Plaintiffs - Appellants, | * | Minnesota. |
| | * | |
| v. | * | |
| | * | |
| City of Minneapolis, including but not limited to its Police Department; Richard Zimmerman; Steven Wuorinen, in his official and individual capacities; Kevin Lazarchic, in his official and individual capacities; Scott Downing, in his official and individual capacities; Fine Associates, | * | [UNPUBLISHED] |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: February 12, 2009
Filed: July 13, 2009

_____

Before WOLLMAN, HANSEN, and BYE, Circuit Judges.
_____

PER CURIAM.

This case arises out of a birthday party held at Marquette Place in Minneapolis, Minnesota. Plaintiffs brought suit against Fine Associates, the management company in charge of Marquette Place, the City of Minneapolis police department (MPD), and four police officers: Richard Zimmerman, Steve Wuorinen, Kevin Lazarchic, and Scott Downing, claiming violations of 1) 42 U.S.C. § 1983 (excessive force, substantive due process, and equal protection), and 2) state law claims for malicious prosecution, assault and battery, false imprisonment, intentional interference with contract, and conversion. The district court[1] dismissed all claims on summary judgment, except the § 1983 excessive force claims and state law assault and battery claims asserted by Rickey Jones against the MPD and officers Wuorinen, Lazarchic, and Downing. Those claims proceeded to trial and a jury returned verdicts in favor of the defendants. The district court denied Jones's motions for judgment as a matter of law (JAML) and a new trial. The plaintiffs now appeal, and we affirm.

On November 22, 2002, friends and family of Marlon Henderson held a birthday celebration in his honor at Marquette Place's "party room" on the building's thirty-fifth floor. At close to midnight, Maxine Pitts, one of the guests and an employee of Marquette Place, contacted security and advised them the party room was at capacity and police should be called to assist in clearing out the guests. After further discussions, it was determined would-be guests were blocking the lobby on the main floor and police should be called to control the crowd.

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

-2-

Instead of calling the police, security had been instructed to contact Richard Zimmerman whenever the need for a police presence arose. Zimmerman, a Minneapolis police officer, worked part-time as a paid consultant for Fine Associates. Security contacted Zimmerman, who called police and asked for a squad car to be sent to the hotel. Zimmerman arrived at the hotel shortly thereafter. Upon entering the lobby, Pitts met Zimmerman and advised him the party had ended because the room reached capacity, and the crowd gathered in the lobby needed to be cleared. Zimmerman reacted angrily, telling her she was fired. He then proceeded to the party room. Plaintiffs allege Zimmerman ate, socialized, and carried two bottles of champagne around the party room. When party organizers told Zimmerman the party was over and they were cleaning up, he told them to leave and reiterated to Pitts she was fired.

According to the plaintiffs, Zimmerman's actions caused the situation to deteriorate rapidly. Zimmerman called police via 911 and again requested police officers be dispatched. He specifically requested multiple squads because of the number of people involved. Minutes later, Zimmerman called 911 again. This time he told the dispatcher there were drugs on the premises, and requested the call be coded as a "help" call.[2] Within minutes, dozens of officers arrived on the scene and attempted to access the party room.[3] When police arrived on the thirty-fifth floor, the sheer number of people attempting to leave prevented them from getting off the elevators. Officers sprayed mace into the crowd to disperse it, thereby gaining access to the floor. In the ensuing confusion, plaintiffs claim they were exposed to mace and suffered eye and lung irritation. Others contend they were made to wait on a balcony for several minutes while police cleared party-goers from the room. Another plaintiff

---

[2]A "help" call in police parlance signifies an urgent situation and frequently is interpreted as one which presents an immediate danger to officers on the scene.

[3]Plaintiffs allege fifty or more officers responded to the call.

alleges she was karate chopped on the back of the neck when she attempted to assist Jones as he was arrested and wrestled to the ground.

As police were attempting to clear the floor, Jones, the videographer hired to record the celebration, began videotaping the police. According to plaintiffs, the police reacted angrily and ordered Jones to stop. The police claim they repeatedly asked Jones to move out of the way so they could clear the crowds but he refused. When Jones continued filming, he was arrested, wrestled to the ground, and his equipment seized. There is no dispute Jones sustained a laceration to the face and bruising during the arrest. Jones contends he was handcuffed and taken to a room where he overheard the individual officers discuss the need to "get their stories straight." Additionally, he claims he was marched down thirty-five flights of stairs handcuffed and taken to the police station for booking. A nurse there refused to treat Jones, and he was taken to the hospital emergency room for treatment of a facial laceration and bruising. Thereafter, police returned him to the station and booked him on charges of obstruction. A state court later dismissed the charges, finding a lack of probable cause.

The plaintiffs brought suit against Fine Associates under § 1983 alleging the corporation acted under color of state law. They allege Zimmerman acted in a dual capacity as an agent of Fine Associates and as a police officer, and his actions were attributable to Fine Associates. The district court dismissed the claim, holding a corporation – even one acting under color of law – is not vicariously liable under a theory of respondeat superior. The district court also dismissed Jones's malicious prosecution claim, finding there was no evidence Fine Associates was involved in the decision to prosecute Jones.

Next, the district court dismissed the remaining § 1983 excessive force claims as to all plaintiffs (except Jones) finding the injuries alleged were de minimus and insufficient to support a Fourth Amendment violation. The court also dismissed the

§ 1983 substantive due process claims, finding they failed to allege the deprivation of a protected liberty or property interest, and were more appropriately cast as excessive force claims, which had been dismissed. Finally, the court dismissed Jones's § 1983 claim premised on equal protection, concluding his claim he was discriminated against because he was operating a camera failed to state an equal protection claim.

Finally, the court analyzed the plaintiffs' state law claims and dismissed all but Jones's claims for assault and battery. The court concluded the individual officers were immune from suit under state law unless their actions were willful or malicious. According to the court, the claims failed for lack of any factual basis, e.g., there was no evidence to support a claim of conversion premised on allegations the police removed liquor from the party, and the officers were immune from suit because there was no evidence they acted wilfully or maliciously. Because the court had previously denied summary judgment on Jones's claims of excessive force, it denied summary judgment on his state law assault and battery claims.[4]

Jones's excessive force claims against Wuorinen, Downing, Lazarchic, and the MPD proceeded to trial. The jury returned verdicts for the defendants, and Jones moved for JAML and a new trial. The district court denied the motions, noting it might have found differently but credibility determinations were the province of the jury and there was sufficient evidence to support the verdicts. The plaintiffs appeal the district court's summary judgment rulings and its denial of Jones's motions for JAML and a new trial.

"We review a grant of summary judgment de novo, applying the same standard as the district court. Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

---

[4]At trial the excessive force claim and assault and battery claims were merged and tried as an excessive force claim.

When ruling on a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party." Sappington v. Skyjack, Inc., 512 F.3d 440, 445 (8th Cir. 2008) (internal quotations and citations omitted).

We review the district court's denial of a motion for judgment as a matter of law de novo using the same standards as the district court. Keenan v. Computer Assocs. Intern., Inc., 13 F.3d 1266, 1268 (8th Cir. 1994). A motion for judgment as a matter of law presents a legal question to the district court and this court on appeal: "[W]hether there is sufficient evidence to support the jury's verdict." Id. (quoting White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992)). We view the "evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility." Id. A grant of judgment as a matter of law is proper only if the evidence viewed according to these standards would not permit "reasonable jurors to differ as to the conclusions that could be drawn." Dace v. ACF Indus., Inc., 722 F.2d 374, 375 (8th Cir. 1983).

"We review the denial of a motion for a new trial for a clear abuse of discretion." Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 495 (8th Cir. 2002). "The key question is whether a new trial should have been granted to avoid a miscarriage of justice." Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000) (quoting McKnight v. Johnson Controls, 36 F.3d 1396, 1400 (8th Cir. 1994)).

After carefully reviewing the record on appeal, and applying these standards, we affirm the judgment of the district court. Because an extended discussion would add nothing to the well-reasoned orders of the district court, we affirm by virtue of 8th Cir. R. 47B.

_____