# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-3587

———————

Fuqua Homes, Inc.,

      Appellant,

v.

Raymond Beattie; Sherri Beattie,

      Appellees.

    Appeal from the United States
District Court for the Western
District of Missouri.

———————

Submitted: September 13, 2004
Filed: November 8, 2004 (Corrected 11/16/04)
(Corrected 11/17/04)

———————

Before MORRIS SHEPPARD ARNOLD, BRIGHT, and FAGG, Circuit Judges.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Fuqua Homes, Inc., appeals the orders of the district court[1] sustaining Raymond and Sherri Beattie's motion for judgment as a matter of law and sanctioning Fuqua and its counsel for their conduct before that court. We affirm the district court's entry of judgment for the Beatties, but we vacate the order imposing sanctions and remand the case to the district court for a hearing on that issue.

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

## I.

The Beatties, residents of Wapello County, Iowa, contracted with Fairfield Homes, Inc., a modular home dealer in Fairfield, Iowa, to purchase a modular home manufactured by Fuqua Homes of Boonville, Missouri. Upon delivery of the home in Iowa, the Beatties noticed several defects in it and in the way that it was set up. They later established an internet website describing their dissatisfaction with the condition of the home and making unflattering statements about Fuqua and its business practices. The Beatties drew attention to their website by placing an advertisement in an Iowa newspaper and by posting a sign on their van referring to the website. They drove the van through Iowa communities and through the parking lot of a dealer selling Fuqua homes in Columbia, Missouri. The Beatties also filed suit against Fuqua and Fairfield in Iowa state court claiming, *inter alia*, breach of contract and breach of warranty.

Fuqua initiated the present action by filing a complaint in the United States District Court for the Western District of Missouri claiming that it was libeled by the website and sign and seeking damages for the harm to its business reputation. Applying Missouri law, the district court entered judgment as a matter of law in favor of the Beatties at the close of Fuqua's evidence because Fuqua had failed to prove actual damages as Missouri law requires. The district court stated that it applied Missouri law because the plaintiff chose to file the action in Missouri and because the plaintiff first filed proposed jury instructions premised on Iowa law only days before trial and after twice filing proposed instructions based on Missouri law. The district court also sanctioned Fuqua and its counsel *sua sponte*, ordering them to pay the Beatties' attorney's fees and costs.

## II.

Fuqua first contends that the district court erred in entering judgment for the Beatties because the court should have applied Iowa law rather than Missouri law to the case. The district court's choice of law is central to this case because judgment

as a matter of law would have been improper under Iowa law: Missouri law requires proof of actual damages in a libel case while Iowa law adheres to the rule that damages may be presumed in an action for libel per se. *Compare Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 313 (Mo. 1993), *with Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 222 (Iowa 1998).

It appears that the district court decided to apply Missouri law primarily because Fuqua chose to file this action in a Missouri federal court, rather than pressing its claim as a counterclaim in the action that the Beatties brought in Iowa state court. With respect, we believe that the path to the answer to the choice-of-law question is a good deal more complex than that. The district court, in determining which state's substantive law governed, should have applied the forum state's conflict-of-laws rules, as opposed to simply applying the forum state's substantive law. In other words, the district court should have given effect to what is called the whole law of the forum. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Pritchard-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 n.4 (8th Cir. 1984).

Fuqua and the Beatties agree that the application of Missouri's conflict-of-laws rules should have led the court to apply some variant of the so-called "most significant relationship test." Under that approach, a court applies the substantive law of the state with the most significant relationship to the issues presented in the case. *See Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. 1992). Citing § 145 of the Restatement (Second) of Conflict of Laws (1971), the court in *Thompson*, 833 S.W.2d at 870, noted that in applying the "most significant relationship test," the contacts with each state should "be evaluated according to their relative importance with respect to the particular issue" under consideration. Section 145 "states a principle applicable to all torts and to all issues in tort and, as a result, is cast in terms of great generality." Restatement (Second) of Conflict of Laws § 145 cmt. a (1971). It also goes on to list four specific matters that should be considered in determining

the applicable law: "the place where the injury occurred"; "the place where the conduct causing the injury occurred"; "the domicil, residence, nationality, place of incorporation and place of business of the parties"; and "the place where the relationship, if any, between the parties is centered." *Id.* at § 145(2).

The Missouri Supreme Court has stated that in a defamation case where there is widespread dissemination of the allegedly defamatory matter, such as there was via the internet in the case before us, the most important consideration in choosing the applicable law is the residence of the party allegedly defamed. *See Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434, 436-37 (Mo. 1984). This is because "defamation produces a special kind of injury that has its principal effect among one's friends, acquaintances, neighbors and business associates in the place of one's residence." *Id.* at 437. In reaching its conclusion, the court in *Elmore* cited the Restatement (Second) of Conflict of Laws § 150 (1971), which in essence creates a presumption that when a corporation brings a defamation suit arising from an aggregate communication, the state with the most significant relationship will be the state of the corporation's principal place of business.

The law of defamation, as applied to a business, exists to protect the business's interest in its reputation. Section 150 of the Restatement recognizes that when defamatory material is published in two or more states, the state where the defamed party has its principal place of business will usually be the state in which its reputation is most grievously affected, so long as the defamatory material is published in that state. *See id.* cmts. e, f. Although not squarely addressed by the Restatement or Missouri case law, the publication of defamatory material via the internet is closely analogous to the methods of aggregate communication listed in § 150. We therefore conclude that Missouri would adhere to the presumption created in § 150 in cases where defamatory material is published on an internet website.

-4-

Since Fuqua acknowledges that it has its principal place of business in Missouri, the application of Missouri law would be improper only if other considerations listed in § 145 were sufficiently significant to overcome the presumption of § 150. They are not. We acknowledge that several of the matters listed in § 145 may tend to indicate the propriety of applying Iowa law. For instance, the Beatties purchased the modular home and had it set up in Iowa. Some of the conduct causing the injury occurred in Iowa, moreover, where the Beatties created and advertised the website. But we nevertheless believe that the Beatties' conduct had its most significant effect in the state of Missouri because that is where Fuqua maintains its principal place of business. Accordingly, the district court reached the correct result in deciding to apply Missouri law.

It follows that the district court properly sustained the Beatties' motion for judgment as a matter of law because Fuqua failed to adduce any evidence of actual damages as Missouri's law requires. *See Nazeri*, 860 S.W.2d at 313. Contrary to Fuqua's assertions, the district court was under no duty to hear further argument from Fuqua before sustaining the Beatties' motion. The Beatties moved for judgment after Fuqua had presented its case in its entirety and had rested. Given Fuqua's utter failure to offer any evidence of actual damages, the district court was obliged to sustain the Beatties' motion. *See Falco Lime, Inc. v. Tide Towing Co.*, 29 F.3d 362, 365-66 (8th Cir. 1994); *see also* Fed. R. Civ. P. 50(a).

## III.

Fuqua also appeals the district court's imposition of sanctions against Fuqua and its counsel. The record indicates that Fuqua was given neither notice nor an opportunity to be heard before the district court ordered, *sua sponte*, that Fuqua and its counsel pay the Beatties' attorney's fees and costs. The court also failed to identify the authority under which it imposed the sanctions.

The Supreme Court has said that "[l]ike other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record," and has indicated that the denial of these procedural safeguards has due process implications. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 & n.14 (1980); *see also In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000); *Jensen v. Federal Land Bank of Omaha*, 882 F.2d 340, 341 (8th Cir. 1989). Because the district court did not give Fuqua or its counsel fair notice or an opportunity to be heard, we must vacate the district judge's order imposing sanctions and remand the case to the district court for a hearing on whether their actions warranted sanctions.

Furthermore, the district court did not identify the authority under which it imposed the sanctions. This omission makes it impossible to review the district court's order since we cannot intelligently determine whether the court sanctioned Fuqua and its counsel under Federal Rule of Civil Procedure 11 (as Fuqua asserts), under 28 U.S.C. § 1927 (as the Beatties assert), or under some other authority. The source of authority and basis for the sanctions is critical because while Rule 11 and § 1927 overlap to some extent, they sanction different kinds of actions, require the application of disparate standards of proof, permit the sanctioning of different persons, and differ in the procedures that the sanctioning court must follow. Because the district court did not specify the authority under which it imposed sanctions, we are not in a position to determine whether the district court correctly applied the source of its authority for the sanctions. We also respectfully suggest that if the district court sanctions Fuqua or its counsel in the remanded proceedings, it ought to use care to confine the scope of its sanctions to that indicated in its stated source of authority.

IV.

Accordingly, we affirm the district court's decision to sustain the Beatties' motion for judgment as a matter of law, vacate the district court's imposition of

sanctions, remand the case to the district court for a hearing on the sanctions, and direct the district court to articulate the basis for any sanctions that it may impose.

_____