# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2914

_____

| | |
|---|---|
| Alvin Howard, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the Eastern |
| | * District of Missouri. |
| Missouri Bone and Joint Center, Inc., | * |
| | * |
| Appellant. | * |

_____

Submitted: April 12, 2010
Filed: August 12, 2010

_____

Before WOLLMAN, MURPHY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Appellee Alvin Howard brought this negligence action against Missouri Bone and Joint Center, Inc. ("MBJC"), alleging that MBJC's negligence caused the back injury Howard sustained in 2001. The jury returned a verdict for Howard, after which MBJC filed a motion for judgment as a matter of law or for new trial. The district court[1] overruled that motion and this appeal followed. We affirm.

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

I.

As this appeal is from the denial of a motion for judgment as a matter of law, we recite the facts of this case in the light most favorable to Howard, the prevailing party. See Keenan v. Computer Assocs. Int'l, Inc., 13 F.3d 1266, 1268-69 (8th Cir. 1994). In the autumn of 2000, Howard was a student at Greenville College in Greenville, Illinois, and a talented running back on the Greenville football team. On November 21, 2000, following an ankle injury, Howard first visited MBJC, an orthopedic and physical training clinic in St. Louis, Missouri. Howard was interested in working out with an athletic trainer in order to improve his football skills. Kevin Templin, a certified athletic trainer employed by MBJC, provided Howard with an initial evaluation. This initial evaluation consisted of an interview, measurements, and some performance testing. Templin asked Howard to estimate the maximum amount of weight Howard could lift while performing certain exercises, including bench press and squat lifts.[2] Importantly, however, Howard did not do any actual squat lifts on November 21, although this was part of a standard MBJC evaluation. Templin testified that this was because he simply ran out of time. Additionally, Templin did not ask Howard when he had last exercised. In reality, Howard had not done any lower-body workouts in the previous 12 weeks, due to his ankle injury.

On January 8, 2001, Howard returned to MBJC to train under Templin's supervision. Templin employed a "pyramiding" technique with Howard, in which Howard would lift progressively more weight, but with fewer repetitions per set. Howard performed a number of exercises that day, including four sets of squat lifts, without incident. Howard returned on January 10 for another workout with Templin.

---

[2]Squat lifts are an exercise that primarily strengthen the lower body. With a barbell resting on the athlete's trapezius muscles, "the hips and knees are flexed until the knees come to a 90-degree angle to the floor. . . . The hips and knees are then extended, back to the initial position and the exercise is repeated." Ralph M. Buschbacher et al., Sports Medicine and Rehabilitation 227 (2d ed. 2009).

In the middle of a ten-repetition set of squats, Howard felt a pop and a sharp pain in his lower back. Howard immediately informed Templin of this pain, who responded "no pain, no gain" and that Howard should "push through it." (Trial Tr. vol. 2, 127.) Howard was able to finish the set, during which his pain increased significantly. Howard testified that his "pain went from . . . a 6 when it first happened to a 10 instantly." (Id. at 130.) This pain ranged from Howard's lower back, through his left buttocks and down through his left leg. Following Howard's completion of the set of squat lifts, and at Templin's instruction, Howard did some stretching and rode a stationary bike, neither of which relieved his pain.

After seeking treatment at various hospitals, Howard was eventually referred to neurosurgeon Dr. Gregory J. Bailey. Dr. Bailey examined Howard on March 5, 2001, and diagnosed him with a herniated disc in his back. Dr. Bailey surgically repaired Howard's herniated disc on March 20, 2001.

In August 2005, Howard filed this action against MBJC, alleging that MBJC was negligent in three respects: (1) by failing to conduct a proper evaluation of Howard before designing a workout program; (2) by instructing Howard to continue to workout after being advised of his back pain during the workout; and (3) by failing to discontinue Howard's workout after being advised of his back pain. At trial, Howard testified about his back injury and how it has affected his life and his aspirations to play professional football. Templin testified about his recollection of how Howard's injury happened and about his training techniques. Templin admitted that he did not note when Howard had last worked out, and admitted that this is important information to consider when designing a workout.

According to Dr. Bailey's videotaped deposition testimony, which was played for the jury, Howard's injury "was causally related to" the January 10 incident, and the injury caused Howard significant pain and permanently damaged Howard's back. (J.A. 15.) Finally, Mike Hadden, a certified athletic trainer and the Director of

Athletic Training at Simpson College, testified for MBJC about the standard of care for certified athletic trainers such as Templin. Hadden testified that Templin's actions of telling Howard to continue lifting, even after Howard felt significant pain in his back, constituted a violation of the standard of care. Hadden also testified that Templin's evaluation of Howard was proper, but admitted on cross-examination that Templin should have tested Howard on squat lifts.

At the close of all evidence, MBJC moved for judgment as a matter of law under Federal Rule of Civil Procedure 50, which was denied. The case was submitted to the jury on a disjunctive instruction, allowing the jury to rule for Howard if they found that (1) MBJC committed any one of the three negligent acts alleged, and (2) this negligence injured Howard. The jury returned a verdict for Howard in the amount of $175,000. Shortly thereafter, MBJC filed a renewed motion for judgment as a matter of law, or in the alternative, for a new trial, which was denied.

## II.

MBJC appeals the district court's denial of its motion for judgment as a matter of law, or in the alternative, for a new trial. We review de novo the district court's denial of a motion for judgment as a matter of law, using the same standards as the district court. See Keenan, 13 F.3d at 1268. Under Rule 50, if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party on [an] issue, the court may . . . grant a motion for judgment as a matter of law against the party." Fed. R. Civ. P. 50(a). On appeal, we "must not engage in a weighing or evaluation of the evidence or consider questions of credibility," Keenan, 13 F.3d at 1269 (quotation omitted), and "we must give great deference to the jury's verdict," Heaton v. The Weitz Co., 534 F.3d 882, 889 (8th Cir. 2008) (quotation omitted). "Judgment as a matter of law is appropriate only when all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position

of the nonmoving party.'" Keenan, 13 F.3d at 1269 (quoting White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992)).

The standard for granting a motion for new trial is higher still. Under Rule 59, the decision to grant a new trial lies within the sound discretion of the trial court, and its decision will not be reversed on appeal absent a clear abuse of that discretion. See Lowe v. E.I. DuPont de Nemours & Co., 802 F.2d 310, 310-11 (8th Cir. 1986). "Where the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion 'is virtually unassailable on appeal.'" Keenan, 13 F.3d at 1269 (quoting Peterson ex rel. Peterson v. Gen. Motors Corp., 904 F.2d 436, 439-40 (8th Cir. 1990)). In such circumstances, the court should only grant a new trial to avoid a miscarriage of justice. See Beckman v. Mayo Found., 804 F.2d 435, 439 (8th Cir. 1986).

A.

MBJC first argues that Howard failed to present evidence that two of MBJC's allegedly negligent acts—instructing Howard to continue working out after he told Templin about his back pain, and failing to stop the workout after Howard told Templin about his back pain—were causally related to Howard's injury. MBJC contends that the evidence presented at trial only established that Howard suffered a herniated disc during his workout, not that he was injured by continuing to workout.

In this diversity case, Missouri substantive law applies. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under Missouri law, to establish a claim for negligence, a plaintiff must prove three principal elements: "(1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) a failure of the defendant to perform that duty, and (3) an injury proximately caused by the defendant's failure." Blevens v. Holcomb, 469 F.3d 692, 694 (8th Cir. 2006). When, as here, a verdict-directing "instruction is given in the disjunctive, there must be

evidence to support the submission of each allegation." Ladish v. Gordon, 879 S.W.2d 623, 628 (Mo. Ct. App. 1994). While "[a]bsolute certainty is not required in proving a causal connection between a negligent defendant's actions and the plaintiff's injury," Williams v. Daus, 114 S.W.3d 351, 359 (Mo. Ct. App. 2003) (quotation omitted), the evidence must bring the causal connection beyond "the nebulous twilight of speculation, conjecture and surmise." Cowan v. Perryman, 740 S.W.2d 303, 304 (Mo. Ct. App. 1987) (quotation omitted). "A submissible case is made if substantial evidence is presented that shows the injury is a natural and probable consequence of a defendant's negligence." Williams, 114 S.W.3d at 359. "Absent compelling evidence which establishes the absence of causation, the causation question is for the jury." Id.

After viewing the evidence in the light most favorable to Howard, we find sufficient evidence on causation for the issue to go to the jury. Howard testified that he felt a pop or pull in his back while lifting, and that this pain increased significantly between when he felt this pop or pull and when he finished the set of squat lifts. Dr. Bailey testified at his deposition about Howard's symptoms, causally linking Howard's injury to his workout on January 10. Hospital records from January 15, 2001, indicate that Howard's pain began during his workout, but that the tingling and numbing sensation in his leg and foot—symptoms which are consistent with a herniated disc—did not begin until after he finished the workout. Taken together, this evidence is sufficient to bring the causal connection between MBJC's negligence and Howard's injury beyond "the nebulous twilight of speculation, conjecture and surmise[.]" Cowan, 740 S.W.2d at 304 (quotation omitted). As such, the question of causation was properly presented to the jury and, although the evidence may be susceptible of more than one reasonable interpretation, see Keenan, 13 F.3d at 1269, the district court did not err in denying MBJC's motion for judgment as a matter of law on that issue. Additionally, because we see no miscarriage of justice in the verdict, we hold that the district court did not abuse its discretion in denying MBJC's motion for a new trial on the causation issue.

B.

MBJC next argues that Howard failed to meet his evidentiary burden as to MBJC's third allegedly negligent act—failing to conduct a proper evaluation of Howard. First, MBJC contends that Howard failed to present evidence that Templin violated the standard of care for certified athletic trainers when he evaluated Howard on November 21, specifically by failing to test Howard's ability to do squat lifts and failing to ask Howard when he had last worked out.

At trial, Mike Hadden testified regarding the standard of care applicable to certified athletic trainers. Hadden testified that Templin's November 21 evaluation of Howard was generally within the standard of care. However, on cross-examination, Hadden admitted that some of Templin's actions violated the standard of care:

Q    So in this case, before Alvin Howard was permitted to do squats in a training program, Mr. Templin should have tested him for squats, shouldn't he?
A    In a situation where you want to get an idea of a repetition maximum, the actual testing that was done from what I understand was the actual -- he was using a portion of the weight of what he thought his max was and then used percentages of that, which is a form of testing, yes.
Q    Okay. But the best information at the time of the needs assessment on November 21, 2000 would have been to conduct that test; correct?
A    Yes.
Q    And that's what you would have done?
A    Yes.
Q    Okay. Mr. Templin didn't do that is your understanding; is that right?
A    Yes.
Q    His failure to do that would be a violation of the standard of care, wouldn't it?
A    It wouldn't be if he would have done it at a later date.

-7-

Q       Okay. But he didn't.

A       Correct.

. . .

A       You don't necessarily have a needs assessment completely performed before you move on to the actual exercise program. In other words, in this particular case, again I don't know the exact reason why he just did the bench press and didn't do the others, obviously you stated to me that it was time, but Mr. Templin may have thought that he could do the testing later at a later date when he actually goes through the exercises.

Q       Sir, you are speculating now; right?

A       Yes.

Q       You don't know that?

A       I don't know that, no.

Q       In fact, you did review his testimony, and the testimony he gave was that he ran out of time?

A       That is correct.

Q       And that he never did any additional testing?

A       Yes.

Q       Okay. And assuming those facts to be correct, that would be a violation of the standard of care for a certified athletic trainer, wouldn't it?

A       Yes.

(Trial Tr. vol. 3, 72-74.) Additionally, Templin testified that he did not ask Howard when he had last lifted weights, and that this would have been important to know in order to ease Howard into a workout schedule and develop a proper workout plan. Viewed in the light most favorable to Howard, see Keenan, 13 F.3d at 1268-69, this evidence is sufficient to allow a reasonable jury to find that Templin breached the standard of care of certified athletic trainers.

Second, MBJC argues that, even if Templin did breach the standard of care, Howard presented no evidence that this breach was causally connected to his injury. MBJC argues that Howard was required to show, by expert testimony: (1) what a "proper" evaluation would have revealed; (2) what workout plan would have resulted

from such an evaluation; and (3) that had Howard been using this workout plan, he would not have been injured. MBJC primarily argues that there is no evidence that a "proper" evaluation would have somehow saved Howard from injury. We disagree. While, of course, no one can say for certain that Howard would not have been injured had he been properly evaluated, "[a]bsolute certainty is not required in proving a causal connection between a negligent defendant's actions and the plaintiff's injury," Williams, 114 S.W.3d at 359 (quotation omitted). Here, Howard presented evidence that "leads to the logical conclusion that if certain things had been properly done[,] certain results would not have occurred, and such results did occur," which is sufficient to submit causation to the jury. Id. (quotation omitted). Given the deference we must give jury verdicts, see Heaton, 534 F.3d at 889, we decline to remove this case from the province of the jury, and we affirm the district court's denial of MBJC's motion for judgment as a matter of law. Additionally, because we see no miscarriage of justice in the verdict, we hold that the district court did not abuse its discretion in denying MBJC's motion for a new trial.

III.

For the foregoing reasons, the judgment of the district court is affirmed.

_____