# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3121

_____

Christine Winter, Individually and as Executor of the Estate of Ruth Baldwin, Deceased

*Plaintiff - Appellee*

v.

Novartis Pharmaceuticals Corporation

*Defendant - Appellant*

_____

No. 12-3409

_____

Christine Winter, Individually and as Executor of the Estate of Ruth Baldwin, Deceased

*Plaintiff - Appellee*

v.

Novartis Pharmaceuticals Corporation

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: September 26, 2013
Filed: January 9, 2014

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Ruth Baldwin developed osteonecrosis of the jaw (ONJ) after two of her teeth were extracted. She sued, alleging Novartis Pharmaceuticals Corporation negligently failed to provide adequate warnings for two drugs she took, Aredia and Zometa. After a jury trial, Baldwin, by her executor, received $225,000 in compensatory damages, plus certain costs. Novartis appeals, arguing the district court: (1) improperly found that inadequate warnings proximately caused Baldwin's injuries; (2) erred in applying Missouri law to the punitive damages claim; (3) abused its discretion in admitting hearsay evidence; and (4) abused its discretion in awarding the costs for depositions conducted as part of multi-district litigation. Having jurisdiction under 18 U.S.C. § 1291, this court affirms in part, vacates in part, and remands.

I.

Novartis seeks judgment as a matter of law, arguing Baldwin did not establish that her injuries were proximately caused by inadequate warnings. This court reviews de novo a district court's grant or denial of a motion for judgment as a matter of law. *Liberty Mut. Fire Ins. Co. v. Scott*, 486 F.3d 418, 422 (8th Cir. 2007). This court reviews the evidence most favorably to the non-moving party, drawing all reasonable inferences and resolving all factual disputes in its favor. *Id.*

Under Missouri law, "it is incumbent upon the manufacturer to bring the warning home to the doctor." *Krug v. Sterling Drug, Inc.,* 416 S.W.2d 143, 146 (Mo. 1967) (internal quotations omitted). To establish proximate causation in a failure-to-warn claim, a plaintiff "must show that a warning would have altered the behavior of the individuals involved in the accident." *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 761-63 (Mo. banc 2011) (internal quotations omitted). Missouri presumes that a

warning, if given, will be heeded. *Id.* Absolute certainty is not required to prove a causal connection between a defendant's acts or omissions and the plaintiff's injuries. ***Howard v. Missouri Bone & Joint Ctr., Inc.***, 615 F.3d 991, 996 (8th Cir. 2010). A submissible case requires substantial evidence that the injury is a natural and probable consequence of the defendant's behavior. *Id.* Absent compelling evidence that causation is wanting, causation is for the jury. *Id.*

When Dr. James N. Hueser first prescribed Aredia for Baldwin in July 2003 (and Zometa in September 2003), the risk of ONJ was not mentioned in the package inserts. The company modified the inserts in September 2003, when ONJ was mentioned only in the "Post-Marketing Experiences" section, not in the "Warnings" section.

Novartis focuses on Dr. Hueser's testimony that he did not read the inserts before prescribing the drugs (and in fact, claimed to never read inserts before prescribing any drugs). Novartis believes this severs any link between its duty to warn and Baldwin's injuries. Novartis maintains, "The majority of courts that have examined the issue have held that when a physician fails to read or rely on a drug manufacturer's warnings, such failure constitutes the 'intervening, independent, and sole proximate cause' of the plaintiff's injuries, *even where the drug manufacturer's warnings were inadequate*." ***Thom v. Bristol-Myers Squibb Co.***, 353 F.3d 848, 856 (10th Cir. 2003) (emphasis in original). *See also **Johnson v. Medtronic, Inc.***, 365 S.W.3d 226, 233 (Mo. App. 2012) (finding no proximate causation where a doctor failed to read instructions and warnings printed on a defibrillator before using it); ***Nelson v. Ford Motor Co.***, 150 F.3d 905, 907 (8th Cir. 1998) (stating "it was not shown that modified or additional warnings would likely have prevented the accident" after plaintiff testified "he had not consulted the existing warnings because he thought he knew how to use the [car] jack") (applying Missouri law).

Novartis's focus ignores the other ways Dr. Hueser would receive warnings. *See **In re Levaquin Prods. Liab. Litig.***, 700 F.3d 1161, 1168-69 (8th Cir. 2012) (stating that "failure to read a warning does not necessarily bar recovery" and

-3-

discussing the importance of sales representatives and "Dear Doctor" letters in providing warnings) (applying Minnesota law). In this case, there is evidentiary support for other ways that warnings could have reached Dr. Hueser. *See Pustejovsky v. Pliva, Inc.*, 623 F.3d 271, 277 (5th Cir. 2010) (affirming summary judgment because there was no "evidentiary support" for "other ways an adequate warning might have reached" a physician). While Dr. Hueser did not read drug inserts, there was testimony that he obtained pharmaceutical warnings through other means—continuing medical education, review of medical literature, discussion with other physicians, and statements by Novartis's sales representative.

Novartis knew of the risk of ONJ as early as 2002, but instructed its sales force not to mention the disease when making calls to physicians. The sales representative assigned to Dr. Hueser testified that he did not discuss the disease with Dr. Hueser until late September 2004. By then, Baldwin had been taking the drugs for 13 months, and ONJ had been triggered by the extraction of two of her teeth. Also, the "Dear Doctor" letter warning of ONJ was not sent to Dr. Hueser until September 2004, after ONJ had been triggered. By that time, Baldwin's expert testified that ONJ had become a "growing epidemic." On these facts, a reasonable jury could find that Novartis prevented warnings about ONJ from reaching Dr. Hueser.

Novartis finally argues that, even if Dr. Hueser had received a warning, he would still have prescribed Aredia and Zometa. According to Novartis, Baldwin should have submitted proof that Dr. Hueser would not have prescribed the drugs if he had received the warnings the company eventually provided. *See Moore*, 332 S.W.3d at 761 (requiring a plaintiff to "show that a warning would have altered the behavior of the individuals involved in the accident"). Novartis claims the lack of such testimony severs proximate causation.

Novartis's argument fails because a change in prescribing patterns after receiving a warning is enough to create a submissible case. *Hanrahan v. Wyeth, Inc.*, No. 4:04CV01255ERW, 2012 WL 2395881, at *10 (E.D. Mo. June 25, 2012). *See also In re Levaquin Prods. Liab. Litig.*, 700 F.3d at 1168-70 (applying Minnesota

-4-

law); ***In re Prempro Prods. Liab. Litig.***, 586 F.3d 547, 569-70 (8th Cir. 2009) (applying Arkansas law). Baldwin introduced evidence that Dr. Hueser stopped prescribing the drugs once he learned of the risk of ONJ. A reasonable jury could conclude that Dr. Hueser would not have prescribed the drug for Baldwin if he had been warned.

On these facts, a jury could reasonably find that Baldwin's injury was the "natural and probable consequence" of Novartis's behavior. *See **Howard***, 615 F.3d at 996 ("A submissible case is made if substantial evidence is presented that shows the injury is a natural and probable consequence of a defendant's negligence.") (internal quotations omitted).

## II.

Novartis alternatively seeks a new trial, arguing the district court erred in applying Missouri law to Baldwin's punitive damages claim. Though the jury did not award punitives, Novartis asserts that the punitive evidence impermissibly tainted the jury's consideration of liability and compensatory damages. This court reviews de novo the district court's choice-of-law determination. ***Dorman v. Emerson Elec. Co.***, 23 F.3d 1354, 1358 (8th Cir. 1994).

District courts sitting in diversity apply the choice-of-law rules of the state where they sit. ***Whirlpool Corp. v. Ritter***, 929 F.2d 1318, 1320 (8th Cir. 1991), *citing **Klaxon Co. v. Stentor Elec. Mfg. Co.***, 313 U.S. 487, 496 (1941). Under Missouri's choice-of-law rules, courts apply the substantive law of the state with the "most significant relationship" to the occurrence and the parties. ***Fuqua Homes, Inc. v. Beattie***, 388 F.3d 618, 621 (8th Cir. 2004), *citing **Thompson v. Crawford***, 833 S.W.2d 868, 870 (Mo. banc 1992). Missouri, adopting the Restatement (Second) of Conflict of Laws, requires consideration of four factors in determining the applicable law for tort actions: "the place where the injury occurred," "the place where the conduct causing the injury occurred," "the domicil, residence, nationality, place of incorporation and place of business of the parties," and "the place where the

relationship, if any, between the parties is centered." ***Fuqua Homes***, 388 F.3d at 621, *citing* **Restatement (Second) of Conflict of Laws** § 145 (1971). More importantly, for personal injury actions, Missouri applies the law of the place of injury, unless some other state has a more significant relationship. ***Thompson****,* 833 S.W.2d at 870. Missouri's formulation "essentially establishes a presumption that the state with the most significant relationship is the state where the injury occurred." ***Dorman v. Emerson Elec. Co.***, 23 F.3d 1354, 1358 (8th Cir. 1994). *See also* **Restatement (Second) of Conflict of Laws** § 146 (1971).

Novartis argues that New Jersey has the most significant relationship to the punitive damages claim because that state is the site of any labeling and marketing misconduct. Baldwin's punitive damages claim would be barred by the New Jersey Products Liability Act. *See* **N.J. Stat. Ann. § 2A:58C-5c** (2013) ("Punitive damages shall not be awarded if a drug . . . which caused the claimant's harm was subject to premarket approval or licensure by the federal Food and Drug Administration . . . and was approved or licensed."). Novartis's domestic operations are headquartered in New Jersey, where it interacts with the Food and Drug Administration (FDA). Moreover, Novartis contends that Missouri's interest is only to compensate Baldwin, not to impose punitive damages, and these claims are severable under the Second Restatement's rule of depecage. *See* **Restatement (Second) of Conflict of Laws** § 146 cmt. d (1971) ("The courts have long recognized that they are not bound to decide all issues under the local law of a single state.").

The district court correctly held that Missouri has the "most significant relationship" to the punitive damages claim. Missouri is the place where the injury occurred, making it presumptively the state with the most significant relationship. ***Dorman***, 23 F.3d at 1358; ***Thompson***, 833 S.W.2d at 870. Missouri is where Novartis's sales representatives failed to warn Baldwin's doctor, making it also, at least in part, the state of the conduct causing the injury. New Jersey may have an interest in its corporations being governed by its punitive damages provisions, but as the district court held, Missouri has a strong interest in applying its punitive damages laws to deter conduct by corporations doing business in Missouri that harms Missouri

residents. New Jersey's interest, balanced against Missouri's, does not overcome Missouri's presumption that the law of the place of injury should apply. *See **In re Nuvaring Prods. Liab. Litig.**,* Nos. 4:08–MD–1964, 4:08–CV–00558, 2013 WL 3716390, at \*6 (E.D. Mo. July 12, 2013) (holding in a pharmaceutical action that Missouri has a more significant relationship to a punitive damages claim than New Jersey under Missouri's choice-of-law approach). The district court did not err in applying Missouri punitive damages law.

## III.

Novartis seeks a new trial for another reason, that the district court admitted hearsay evidence that tainted the jury. This court "review[s] de novo the district court's interpretation and application of the rules of evidence, and review[s] for abuse of discretion the factual findings supporting its evidentiary rulings." ***Weems v. Tyson Food, Inc.,*** 665 F.3d 958, 964 (8th Cir. 2011). A new trial will be awarded only if an evidentiary ruling constituted a clear and prejudicial abuse of discretion affecting a substantial right of the objecting party. ***Id.***

Through MedWatch—the FDA's "adverse event reporting" program—medical providers tell the FDA and the drug manufacturer about pharmaceutical problems. The district court admitted several ONJ-related MedWatch forms from 2002. Each had a checkmark by (unidentified) healthcare providers that copies of the forms were sent to the manufacturer, Novartis. Baldwin used these forms to prove that Novartis received reports of ONJ as early as September 2002. Novartis responded that the checkmarks did not indicate receipt, offering evidence that it did not receive the forms until 2005.

Novartis correctly reasons that the MedWatch checkmarks are inadmissible hearsay, out-of-court assertions offered for their truth—that the forms were sent to and received by Novartis. The checkmarks are not within any hearsay exception.

Nonetheless, Novartis has not demonstrated the prejudice required for a new trial. Admission of the checkmarks is harmless error because they are cumulative of other trial testimony that Novartis knew of the risk of ONJ in December 2002, months before Baldwin's prescription. *Smith v. Firestone Tire & Rubber Co.*, 755 F.2d 129, 132 (8th Cir. 1985) ("Improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error."). Even without the MedWatch forms, a reasonable jury could conclude that Novartis's warnings were insufficient and untimely for Baldwin.

IV.

Novartis contends that the district court abused its discretion in awarding litigation-wide costs to an individual plaintiff. This court reviews de novo the legal issues about the award of costs and reviews for abuse of discretion the actual award of costs. *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894, 896 (8th Cir. 2009).

This case is one of over 650 cases in multidistrict litigation for consolidated pre-trial proceedings and discovery. Baldwin, the prevailing party, sought transcription costs for 18 depositions used throughout the consolidated MDL proceedings. *See* **Fed. R. Civ. P. 54(d)**. The district court, noting that this is the first case where costs were requested, awarded the full cost of $88,930.25. Novartis claims the district court should have allocated the costs pro rata among the various cases.

Where litigation costs are incurred in connection with more than one proceeding, the district court should allocate the costs. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 764 (8th Cir. 2006) ([A] division of . . . costs among the thirteen cases was equitable . . . . [A]pportionment reduced the risk of duplicative cost recovery."). *See also Ortho-McNeil Pharm., Inc. v. Mylan Labs. Inc.*, 569 F.3d 1353, 1358 (Fed. Cir. 2009) (applying Fourth Circuit law) (vacating a district court's award of litigation-wide expenses and remanding for apportionment among all cases).

The district court abused its discretion in awarding the plaintiff full costs for litigation-wide depositions.

\* \* \* \* \* \* \*

The judgment in appeal 12-3121 is affirmed.  The judgment in appeal 12-3409 is vacated.  The case is remanded.

_____